KAYE, ROSE & PARTNERS, LLP
Bradley M. Rose, CA Bar No. 126281
brose@kayerose.com
Frank C. Brucculeri, CA Bar No. 137199
fbrucculeri@kayerose.com
723 Palisades Beach Road, Suite 108
Santa Monica, CA 90402
Phone:   (310) 551-6555

Attorneys for plaintiffs Backer EHP Inc. and
HDI Global Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| BACKER EHP INC., a Delaware corporation, and HDI GLOBAL INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>M/V ONE APUS, bearing International Maritime Organization No. 9806079 ("the Vessel"), including its engines, boilers, tackle, and other appurtenances, etc., *in rem*; OCEAN NETWORK EXPRESS PTE. LTD.; HAPAG-LLOYD AKTIENGESELLSCHAFT; HMM CO., LTD.; YANG MING MARINE TRANSPORT CORPORATION; C.H. ROBINSON INTERNATIONAL, INC.; C.H. ROBINSON FREIGHT SERVICES LTD dba CHRISTAL LINES; and DOES 1 through 15;<br><br>Defendants. | Case No.  2:21-cv-09605<br><br><br>VERIFIED COMPLAINT *IN REM* AND *IN PERSONAM* |

1

Plaintiffs Backer EHP Inc. ("Backer") and HDI Global Insurance Company ("HDI") as its subrogated insurer (jointly "Plaintiffs") bring this admiralty action *in rem* against M/V *One Apus* and its engines, boilers, tackle, and appurtenances, etc., ("the Vessel") and bring *in personam* claims against Ocean Network Express Pte. Ltd.; Hapag-Lloyd Aktiengesellschaft; HMM Co., Ltd. fka Hyundai Merchant Marine Co., Ltd.; Yang Ming Marine Transport Corporation; C.H. Robinson International, Inc. and C.H. Robinson Freight Services, Ltd. dba CHRistal Lines; and Does 1 through 15, inclusive, and make the following allegations with respect to those time periods relevant to the instant action:

## Jurisdiction and Venue

1. The *in rem* claims against the Vessel arise under the Court's admiralty jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure, 28 U.S.C. section 1333, and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. On information and belief, the Vessel is not presently but will be within this judicial district during the course of this action and subject to arrest to enforce Plaintiffs' maritime lien that arose from the breach of the contract of carriage or, alternatively, from the breach of a bailment.

2. The *in personam* claims against defendants Ocean Network Express Pte. Ltd.; Hapag-Lloyd Aktiengesellschaft; HMM Co., Ltd.; Yang Ming Marine Transport Corporation; C.H. Robinson International, Inc.; and C.H. Robinson Freight Services Ltd dba CHRistal Lines; and Does 1 through 10 for damage to cargo under the Carriage of Goods by the Sea Act ("COGSA") arise under the Court's federal question jurisdiction (28 U.S.C. § 1331); and the claims against those defendants for breach of maritime contract and bailment invoke the Court's admiralty jurisdiction (28 U.S.C. § 1333).

3. The *in personam* claim for negligent design against fictitious defendants Does 11 through 15 comes within the supplemental jurisdiction of the Court within

the meaning of 28 U.S.C. section 1367(a), as that claim under California law is "so related" to the admiralty and federal question claims referenced above "that [it] form[s] part of the same case or controversy." Id. Alternatively, to the extent the citizenship among the parties to that claim is sufficiently diverse, the claim will fall within the Court's diversity jurisdiction (28 U.S.C. § 1332).

4. Venue is proper in this Court within the meaning of 28 U.S.C. section 1391(b)(2), as the cargo that is at the center of Plaintiffs' claims against all defendants was bound for the Port of Long Beach, California, which is within this judicial district.

## The Parties

5. Plaintiff Backer EHP Inc. ("Backer"), a Delaware corporation with its principal place of business in Murfreesboro, Tennessee, is a manufacturer of heating elements and temperature control systems for the global market. Backer was the owner of 416 cartons of defrost resistance heaters, 331 cartons of associated accessories, and one case of heating wire ("Cargo") that were shipped aboard the Vessel on or around 19 November 2020 for ocean carriage from the port of loading in Yantian, China and bound for discharge at Long Beach, California.

6. Plaintiff HDI Global Insurance Company ("HDI"), an Illinois corporation with its principal place of business in Chicago, Illinois, is a property and casualty insurance company. On or about 23 November 2021, pursuant to Backer's policy of insurance, HDI paid Backer $182,302 net of deductible for the loss of its Cargo and from that date became subrogated to Backer's rights and interest in the Cargo.

7. The Vessel, M/V *One Apus*, is a Japanese-flagged container ship bearing IMO number 806079, on which the Cargo was loaded in Yantian, China on or around 19 November 2020 and bound for discharge at Long Beach, California.

8. Defendant Ocean Network Express Pte. Ltd. ("ONE") is a foreign limited liability company registered in Singapore with its principal place of business in Singapore.

9. Defendant Hapag-Lloyd Aktiengesellschaft ("Hapag-Lloyd") is a foreign corporation of the Federal Republic of Germany with its principal place of business in Hamburg, Germany.

10. Defendant HMM Co., Ltd., formerly known as Hyundai Merchant Marine Co., Ltd. ("HMM"), is a foreign corporation registered in the Republic of Korea with its principal place of business in Seoul, Republic of Korea. On information and belief, HMM is and was engaged in business as a slot charterer and vessel-operating common carrier ("VOCC").

11. Defendant Yang Ming Marine Transport Corporation ("Yang Ming") is a foreign corporation of registered in Taiwan with its principal place of business in Keelung, Taiwan. Yang Ming is an operator of container ships.

12. On information and belief, at all times relevant to this action, ONE had a Vessel Sharing Agreement, commonly known as a "slot charter" agreement, with defendants Hapag-Lloyd, HMM and Yang Ming.

13. Defendant C.H. Robinson International, Inc. ("Robinson International"), a Minnesota corporation with its principal place of business in Eden Prairie, Minnesota, is an Ocean Transportation Intermediary ("OTI") licensed by the Federal Maritime Commission as both a non-vessel operating common carrier ("NVOCC") and an ocean freight forwarder. On information and belief, Robinson International acted jointly with defendant C.H. Robinson Freight Services Ltd. dba CHRistal Lines ("Robinson Freight"), a business entity of unknown form, as carriers of the subject shipment of the Cargo.

14. ONE, HMM, Hapag-Lloyd, Yang Ming, Robinson International, and Robinson Freight are referred to jointly in this complaint as "Carrier Defendants."

15. Does 1 through 5 are the owners, disponent owners, charterers, sub-charterers, VOCCs, and owners *pro hac vice* of the Vessel at the time of the subject voyage, and/or were the issuers of bills of lading covering the transportation of the Cargo.

16. Does 6 through 10 are the freight forwarders, NVOCCs, OTIs, and cargo consolidators who handled, arranged, managed, or were otherwise involved in the placement or designation of the subject Cargo for transportation on the Vessel, and/or were the issuers of bills of lading covering the transportation of the Cargo.

17. Does 11 through 15 are the naval architects and marine engineers who designed the Vessel.

18. The true names of each of the Doe defendants are presently unknown to Plaintiffs and are therefore sued in those fictitious names. Plaintiffs will amend their complaint to substitute their true names when they have been determined.

## Facts Material to All Claims

19. In or around November of 2020, the Cargo, owned by Backer, was received by Carrier Defendants and Does 1 through 10 in good order, condition, and quantity at or near the port of loading in Yantian, China. In exchange for valuable consideration, Carrier Defendants and Does 1 through 10 undertook to transport the Cargo to its ultimate destination of Laredo, Texas via the Port of Long Beach, California in the same good order, condition, and quantity as when it was received.

20. The Cargo was loaded aboard the Vessel for the ocean carriage portion of the transport to its ultimate destination.

21. On information and belief, on or about 20 November 2020 while the Vessel was underway from China to Long Beach, it encountered heavy weather while in the North Pacific and lost an estimated 1,816 containers overboard, with hundreds more containers collapsed on deck. The Vessel then diverted to Kobe, Japan to assess the damage.

Verified Complaint *in Rem* and *in Personam*

22. By report dated 10 April 2021, marine surveyors retained by HDI were able to determine with reasonable certainty that 40-foot container number HLBU1333910, which was carrying the Cargo, had been lost and was declared overboard in the heavy-weather incident.

23. The Vessel arrived at the port of Long Beach, California on or about 19 April 2021.

24. Before the shipment of the Backer's Cargo, HDI issued to Backer a policy of insurance by which HDI agreed to indemnify Backer against loss or damage to its Cargo arising from its shipment. HDI became obligated to pay for the loss of the Cargo and has paid Backer $182,302 net of deductible. By agreement and by operation of law, HDI has become subrogated to the rights of HDI to recover for the loss of its Cargo.

### First Cause of Action –
### Damage to Cargo under COGSA and General Maritime Law
*(against Robinson International, Robinson Freight, ONE, Hapag-Lloyd, HMM, Yang Ming, and Does 1–10)*

25. Plaintiffs incorporate paragraphs 1 through 24 as if fully set forth in this section.

26. The Carriage of Goods by the Sea Act ("COGSA") sets out, among other things, the duties of ocean carriers in their transport of goods. See section 4(5), Ch. 229, 49 Stat. 1207 (1936), reprinted in note following 46 U.S.C. § 30701. Likewise, the general maritime law of the United States imposes a duty on ocean carriers to safely and prudently load, stow, secure, carry, and deliver the Cargo in the same good order, condition, and quantity as when received by the carriers and/or the Vessel.

27. In consideration for specified fees and charges, the Carrier Defendants and Does 1 through 10 or those acting on their behalf agreed to carry the Cargo from the place of receipt at the ports of loading to the place of delivery at the ports of

discharge and to provide other transportation-related services including, but not limited to, the receipt, loading, stowage, and containerization of the Cargo.

28. The complete set of Cargo was in good order and condition when it was tendered to the Carrier Defendants and Does 1 through 10 or those acting on their behalf at the ports of loading.

29. The Carrier Defendants and Does 1 through 10 or those acting on their behalf loaded and stowed the Cargo at or near the place of receipt at the ports of loading and issued clean bills of lading for the Cargo.

30. On information and belief, during the Vessel's voyage across the Pacific Ocean to the United States, while the Cargo was aboard the Vessel, the Cargo went overboard and was lost at sea. As a result, the Carrier Defendants and Does 1 through 10 did not deliver the Cargo in the same good order, condition, and quantity as they had undertaken to do when it was originally tendered to them.

31. The loss of the Cargo was caused by the Carrier Defendants' and Does' 1 through 10 breaches of contract and duties under COGSA and the general maritime law; their negligent failure to properly load, stow, carry, protect, store, care for, and deliver the Cargo; and the unseaworthiness of the Vessel and the containers in which the Cargo was loaded.

32. As a proximate result of those actions or omissions or both, Plaintiffs have sustained damages in the approximate amount of $182,302 net of deductible, no part of which has been paid by the Carrier Defendants or Does 1 through 10. The Carrier Defendants and Does 1 through 10 are liable for the total loss of the Cargo in an amount to be proved at trial.

### Second Cause of Action –
### Breach of Maritime Contract of Carriage
*(against Robinson International, Robinson Freight, ONE, Hapag-Lloyd, HMM, Yang Ming, and Does 1–10)*

29. Plaintiffs incorporate paragraphs 1 through 24 as if fully set forth in this

section.

30. On or about November of 2020, Robinson International and/or Robinson Freight issued two CHRistal Lines multimodal bills of lading covering the shipment of all 747 cartons of Cargo ("CHRistal Bills") from Yantian, China to Laredo, Texas via the Port of Long Beach, California.

31. The CHRistal Bills define the "Carrier" of the shipment as "C.H. Robinson International, Inc. and C.H. Robinson Freight Services, Ltd d/b/a CHRistal Lines." The term "Merchant" is defined under the Bills as "include[ing] the shipper, the consignor, the consignee, the exporter, the importer, the receiver of the goods, the holder of this Bill of Lading, any person owning or entitled to possession of the goods under this Bill of Lading, any person having a present or future interest in the goods or any person acting on their behalf."

32. On information and belief, ONE, Hapag-Lloyd, HMM, and/or Yang Ming also issued bills of lading covering the shipment of the Cargo from Yantian, China to Laredo, Texas via the Port of Long Beach, California.

33. By each of their respective bills of lading, which constitute the contract(s) of carriage of the Cargo, the Defendant Carriers and Does 1 through 10 agreed to deliver the Cargo to its lawful owner in the same good order, condition, and quantity as when it was received.

34. In breach of their respective contracts of carriage, the Defendant Carriers and Does 1 through 10 failed to deliver the Cargo in the same good order, condition, and quantity as when it was received, as the Cargo went overboard of the Vessel during its ocean carriage.

35. As a proximate result of the breaches of the respective contracts of carriage of the Defendant Carriers and Does 1 through 10, Plaintiffs have sustained damages in the approximate amount of $182,302 net of deductible, no part of which has been paid by the Carrier Defendants or Does 1 through 10. The Carrier Defendants and Does 1 through 10 are liable for the total loss of the Cargo in an

amount to be proved at trial.

### Third Cause of Action –
### Bailment/Tort
*(against Robinson International, Robinson Freight, ONE, Hapag-Lloyd, HMM, Yang Ming, and Does 1–10)*

36. Plaintiffs incorporate paragraphs 1 through 24 as if fully set forth in this section.

37. Carrier Defendants and Does 1 through 10 or those acting on their behalf arranged, received, and/or accepted the Cargo in good order and condition for shipment on the Vessel and then onward to its ultimate destination of Laredo, Texas. In so doing, Carrier Defendants and Does 1 through 10 or those acting on their behalf formed a bailment as a matter of law.

38. On information and belief, during the Vessel's voyage across the Pacific Ocean to the United States, while the Cargo was aboard the Vessel, the Cargo went overboard and was lost at sea. As a result, the Carrier Defendants and Does 1 through 10 did not deliver the Cargo in the same good order, condition, and quantity as they had undertaken to do when it was originally tendered to them and they accepted that tender. To the contrary, the Carrier Defendants and Does 1 through 10 breached their obligations in bailment to Plaintiffs and their Cargo and failed to exert requisite care and control over the Cargo.

39. Because of their loss of the Cargo, the Carrier Defendants and Does 1 through 10 proximately caused a loss to Plaintiffs in the amount of $182,302 net of deductible, no part of which has been paid by the Carrier Defendants or Does 1 through 10. The Carrier Defendants and Does 1 through 10 are liable for the total loss of the Cargo in an amount to be proved at trial.

### Fourth Cause of Action –
### Enforcement of Maritime Lien *in Rem* Based on Contract

*(against the Vessel)*

40. Plaintiffs incorporate paragraphs 1 through 24 as if fully set forth in this section.

41. At all times relevant to this action, Plaintiffs are and have been the owners of the Cargo.

42. The Cargo was delivered to the Vessel in good order and condition.

43. The Vessel agreed, under a maritime contract of carriage, to transport the Cargo from the port of loading in Yantian, China to the port of discharge in Long Beach, California.

44. That maritime contract of carriage is manifest in the terms and conditions of the CHRistal Bills of Lading and/or those additional bills of lading issued by the Carrier Defendants and Does 1 through 10 or those acting on their behalf.

45. Once the Cargo was loaded on the Vessel and it embarked on the voyage from the port of loading to deliver the Cargo, Plaintiffs had a maritime lien against the Vessel for the shipment of their Cargo as agreed.

46. The Vessel failed to deliver the Cargo as agreed under the contract of carriage because while the Vessel was underway, the Cargo went overboard and was lost at sea.

47. The failure of the Vessel to deliver the Cargo as agreed—the Vessel's breach of the contract of carriage—perfected Plaintiffs' maritime lien against the Vessel.

48. The Vessel is liable to Plaintiffs for the value of their lost Cargo: $182,302 net of deductible, or in an amount to be proved at trial.

### Fifth Cause of Action –
### Enforcement of Maritime Lien *in Rem* Based on Negligence
*(against the Vessel)*

49. Plaintiffs incorporate paragraphs 1 through 24 as if fully set forth in this

section.

50. Plaintiffs plead this tort-based action to enforce their maritime lien against the Vessel in rem in the alternative to their contract-based action in rem to enforce their maritime lien against the Vessel.

51. At all times relevant to this action, Plaintiffs are and have been the owners of the Cargo.

52. The Cargo was delivered to the Vessel in good order and condition and the Vessel accepted the Cargo. The Vessel undertook to transport the Cargo from the port of loading in Yantian, China to the port of discharge in Long Beach, California.

53. Once the Cargo was loaded on the Vessel and it embarked on the voyage from the port of loading to deliver the Cargo, Plaintiffs had a maritime lien against the Vessel for the shipment of their Cargo.

54. By virtue of its negligence, the Vessel breached its obligations in tort to deliver the Cargo as it undertook to do—to deliver the Cargo in the same good order, condition, and quantity as when the Cargo was received—because while the Vessel was underway, the Cargo went overboard and was lost at sea. The Vessel's negligence was the proximate cause of the loss of Plaintiffs' Cargo.

55. The failure of the Vessel to deliver the Cargo perfected Plaintiffs' maritime lien against the Vessel.

56. The Vessel is liable to Plaintiffs for the value of their lost Cargo: $182,302 net of deductible, or in an amount to be proved at trial.

### Sixth Cause of Action
### Defective Vessel Design under General Maritime Law
*(against Does 11-15)*

57. Plaintiffs incorporate paragraphs 1 through 24 as if fully set forth in this

section.

58. The substantive law regarding the liability of designers of the Vessel for defective design in this context is the general maritime law of the United States.

59. Does 11 through 15, as designers of the Vessel, owed a duty to end-users of the Vessel, including Plaintiffs as cargo owners, who have a financial interest in the seaworthiness of the Vessel. It is reasonably foreseeable that designing the Vessel with poor stability when loaded with cargo would endanger the financial interests of the cargo owners whose cargo is being transported on the Vessel.

60. Does 11 through 15 breached their duty to Plaintiffs by designing the Vessel with compromised stability when loaded with cargo containers on deck and encountering reasonably foreseeable weather, wind, and/or sea conditions, such as quartering or following seas, such as were encountered during the voyage at issue with the Vessel.

61. As a proximate result of the defective design of the Vessel, Plaintiffs' cargo went overboard and was lost, causing them damages in the amount of $182,302 net of deductible, or in an amount to be proved at trial.

## Prayer for Relief

**On the First Cause of Action (for Damage to Cargo under COGSA and General Maritime Law):**

1. For compensatory damages in the approximate amount of $182,302 net of deductible or according to proof at trial.

**On the Second Cause of Action (for Breach of Maritime Contract of Carriage):**

2. For compensatory damages in the approximate amount of $182,302 net of deductible or according to proof at trial.

**On the Third Cause of Action (for Bailment/Tort):**

3. For compensatory damages in the approximate amount of $182,302 net of deductible or according to proof at trial.

**On the Fourth Cause of Action (for Enforcement of Maritime Lien *in Rem* Based on Contract):**

4. That process in due form of law, according to the practice of this Court in cases of admiralty jurisdiction, issue against M/V *One Apus* and its engines, tackle, other appurtenances, etc., *in rem*, with a warrant for the arrest of M/V *One Apus*, and that the Vessel be seized by the U.S. Marshal to be held as security against any judgment to be entered herein;

5. That the M/V *One Apus* and its engines, tackle, other appurtenances, etc., after its arrest be condemned and sold, free and clear of all liens and encumbrances, to satisfy the judgment, and that the Court award Plaintiffs out of the proceeds of its sale the full amount of its claim, in the amount of $182,302, together with interest, costs, and attorney's fees;

6. That the maritime lien based on contract be declared to give rise to a preferred maritime lien on the M/V *One Apus* and declared prior and superior to all other interests, liens, or claims against the M/V *One Apus*;

7. That judgment in the amount of $182,302 plus accrued and compound interest and costs and expenses be granted in favor of Plaintiffs and against the Vessel.

**On the Fifth Cause of Action (for Enforcement of Maritime Lien *in Rem* Based on Negligence):**

8. That process in due form of law, according to the practice of this Court in cases of admiralty jurisdiction, issue against M/V *One Apus* and its engines, tackle, other appurtenances, etc., *in rem*, with a warrant for the arrest of M/V *One Apus*,

Kaye, Rose & Partners, LLP

and that the Vessel be seized by the U.S. Marshal to be held as security against any judgment to be entered herein;

9. That the M/V *One Apus* and its engines, tackle, other appurtenances, etc., after its arrest be condemned and sold, free and clear of all liens and encumbrances, to satisfy the judgment, and that the Court award Plaintiffs out of the proceeds of its sale the full amount of its claim, in the amount of $182,302, together with interest, costs, and attorney's fees;

10. That the maritime lien based on negligence be declared to give rise to a preferred maritime lien on the M/V *One Apus* and declared prior and superior to all other interests, liens, or claims against the M/V *One Apus*;

11. That judgment in the amount of $182,302 plus accrued and compound interest and costs and expenses be granted in favor of Plaintiffs and against the Vessel.

**On the Sixth Cause of Action (for Defective Vessel Design under General Maritime Law):**

12. For compensatory damages in the approximate amount of $182,302 net of deductible or according to proof at trial.

**On All Causes of Action:**

13. For costs of suit incurred;
14. For interest at the maximum legal rate;
15. For such other and further relief as the Court may deem just and proper.

Dated: December 10, 2021      KAYE, ROSE & PARTNERS, LLP

By: */s/ Frank C. Brucculeri*
Frank C. Brucculeri
Bradley M. Rose
Attorneys for plaintiffs Backer EHP Inc.
and HDI Global Insurance Company

# VERIFICATION

I, Frank C. Brucculeri, declare as follows:

1. I am one of the attorneys representing plaintiffs Backer EHP Inc. and HDI Global Insurance Company in this matter. I have been authorized by both Backer and HDI to verify this complaint on their behalf.

2. I have read the foregoing "Verified Complaint *in Rem* and *in Personam*" and am familiar with its contents. Based on documents and information obtained from representatives of Backer and HDI, I am informed and believe the matters asserted in this Verified Complaint to be true, and on that ground I allege the matters stated in the Verified Complaint to be true.

I declare under penalty of perjury under the laws of the United States of America and of the State of California that the foregoing is true and correct.

Executed on 10 December 2021 in Laguna Niguel, California.


*/s/ Frank C. Brucculeri*
Frank C. Brucculeri